IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MYSERVICE FORCE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME SHIELD | : | |
| and SERVICEMASTER | : | |
| CONSUMER SERVICES | : | |
| LIMITED PARTNERSHIP | : | NO. 10-6793 |

**MEMORANDUM**

**Padova, J.**                                                                 **March 4, 2013**

Plaintiff myServiceForce, Inc. ("mSF") has filed a Motion for Reconsideration of our January 17, 2013 Order, which granted Defendants' Motion for Summary Judgment in part and denied it in part. For the following reasons, the Motion for Reconsideration is denied.

## I.     BACKGROUND

mSF seeks reconsideration of that part of our January 17, 2013 Memorandum and Order granting the Motion for Summary Judgment as to Count III of the Complaint, which asserts a claim for breach of contract against Defendant ServiceMaster Consumer Services Limited Partnership ("SVM"). mSF alleged in Count III that SVM breached a Mutual Non-Disclosure Agreement ("NDA") that SVM and mSF executed on January 18, 2007. (Compl. Ex. A; Def. Ex. G.) The NDA prohibits a Recipient of Confidential Information from using that Confidential Information for its own benefit or for the benefit of another without the prior consent of the Discloser. (NDA ¶ 2.) The NDA also prohibits a Recipient of Confidential Information from disclosing the Confidential Information to any person outside of its organization. (Id.) The NDA does not prevent a Recipient from independently developing technology similar to that disclosed by a Discloser and explicitly provides that "[s]ubject to the obligations of this

Agreement, no Party will be precluded from independently developing technology or pursuing business opportunities similar to those covered by this Agreement." (Id. ¶ 8(b).)

Count III asserts that SVM breached the NDA by sharing mSF's proprietary information with others and by using mSF's proprietary information for its own projects. (Compl. ¶¶ 78-79.) Defendants moved for summary judgment with respect to Count III on the ground that the record contains no evidence that either SVM or Defendant American Home Shield ("AHS") breached the NDA by sharing any of mSF's protected Confidential Information with any other company or by using mSF's protected Confidential Information for its own projects. mSF argued, in response to the Motion for Summary Judgment, that Defendants breached their obligations under the NDA by (1) using mSF's Confidential Information for their own purposes, in the development of SVM's Strategic Information Systems Plan ("SISP"), and in the implementation of the field services portion of the SISP, known as "Project Genesis," and (2) sharing mSF's Confidential Information with the companies they worked with in developing the SISP and Project Genesis, i.e., KPMG, Oracle, and IBM Global Business Services. We reviewed all of the exhibits on which mSF relied in support of these arguments (see 1/17/13 Mem. at 44-47), and concluded that none of those exhibits constituted "evidence that Defendants, or any of their employees, gave any of mSF's Confidential Information to any other company, or used mSF's Confidential Information for their own benefit." (Id. at 48.)

mSF also argued, in response to the Motion for Summary Judgment as to Count III, that the NDA "unambiguously prohibit[s] Defendants from pursuing business opportunities or requesting features and functions similar to mSF's Confidential Information" and that, consequently, AHS's request for, and purchase of, products that included features and functions similar to those developed by mSF constitutes a breach of the NDA. (See mSF's Sur-Reply

Regarding Defs.' Mot. for Summ. J. at 5.) We concluded that this argument was "belied by the plain language of the NDA[, which] clearly states that 'no Party will be precluded from independently developing technology or pursuing business opportunities similar to those covered by this Agreement.'" (1/17/13 Mem. at 50 (quoting NDA ¶ 8(b)).)

mSF presently argues that we should reconsider our conclusions for three reasons: (1) it would be a manifest injustice to grant Defendants' Motion for Summary Judgment as to Count III because Defendants failed to produce documents responsive to mSF's discovery requests during the time period for discovery in this case, thereby preventing mSF from developing evidence in support of Count III; (2) we erred as a matter of law by deciding that the information provided by Defendants to IBM Global Services does not fall within the broad spectrum of information protected by the NDA; and (3) newly discovered evidence shows that Defendants used mSF's Confidential Information in violation of the NDA.

## II.    LEGAL STANDARD

"The scope of a motion for reconsideration . . . is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011) (citing Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc., 602 F.3d 237, 251 (3d Cir. 2010)). A motion for reconsideration will only be granted if the moving party establishes: "'(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available *when the court granted the motion for summary judgment*; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.'" Id. (quoting Howard Hess, 602 F.3d at 251). "[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial

resources." Moyer v. Italwork, Civ. A. No. 95-2264, 1997 WL 312178, at *3 (E.D. Pa. June 3, 1997) (internal quotation omitted).

A.    The Need to Prevent Manifest Injustice

mSF argues that we should reconsider that part of our Order granting the Motion for Summary Judgment as to Count III of the Complaint in order to prevent a manifest injustice because Defendants' belated production of documents responsive to mSF's discovery requests prevented it from obtaining the evidence it needed to establish (1) that SVM and AHS breached the NDA by using its Confidential Information for their own purposes and (2) that SVM and AHS shared mSF's Confidential Information with KPMG, Oracle or IBM Global Business Services.[1]  mSF's argument is specious and ignores the procedural history of this case.

On September 6, 2011, we issued a scheduling order requiring that discovery be completed by November 30, 2011.  (Docket No. 43.)  Discovery in this case was contentious and, between August 2, 2011 and January 23, 2012, mSF filed four motions to compel discovery or to sanction Defendants for failing to produce certain documents.  (See Docket Nos. 36, 51, 53, and 67.)  On February 3, 2012, mSF also filed a Motion to Dismiss Defendants' Motion for Summary Judgment pursuant to Federal Rule of  Civil Procedure 56(d) because Defendants had not produced all documents responsive to mSF's discovery requests and our prior discovery

---

[1]mSF also contends that Defendants never produced a requested document, "the completed SISP template for Service Work Order Status" that "would show the extent to which Defendants disclosed mSF's Confidential Information to KPMG" and which would have been the subject of depositions, had mSF ever received it.  (Id. at 7.)  Defendants have submitted a copy of this document, along with a copy of the letter Defendants' counsel sent to counsel for mSF when this document was produced to mSF on April 11, 2012.  (Def. Response Ex. A.)  We accordingly reject mSF's argument that our Order granting the Motion for Summary Judgment as to Count III of the Complaint resulted in a manifest injustice because Defendants never produced the completed SISP template for Service Work Order Status.

Orders.[2]  (See Docket No. 67.)  We granted the August 2, 2011 Motion on September 15, 2011; we granted the November 10, 2011 Motion on November 29, 2011; and we granted the November 16, 2011 Motion on December 9, 2011.  (See Docket Nos. 46, 58, and 60.)

Defendants argued, in response to the January 23, 2012 Motion for Sanctions, that they had made a good faith effort to comply with mSF's discovery requests, as modified by our discovery Orders, and they detailed the efforts they had made to find responsive documents.  We subsequently ordered Defendants to supplement their response to the Motion for Sanctions by filing Affidavits prepared by officers of each Defendant stating that Defendants had complied with our discovery Orders and had produced all responsive documents to mSF.  (See Docket Nos. 74 and 80.)  After first producing more documents to mSF, Defendants filed the Affidavits with the Court on March 5, 2012.  (See Docket No. 81.)  Three days later, on March 8, 2012, mSF filed a Reply Brief in Support of its Rule 56(d) Motion, and a Motion for Leave to File a Sur-Reply Regarding Defendants' Motion for Summary Judgment.[3]  (Docket Nos. 82 and 84.) On March 13, 2012, mSF filed a Supplemental Reply in Support of the January 23, 2012 Motion for Sanctions.  (Docket No. 86.)  After considering all of the documents filed in connection with the January 23, 2012 Motion for Sanctions, including mSF's Supplemental Reply, we denied both the January 23, 2012 Motion for Sanctions and the Rule 56(d) Motion on May 8, 2012. (Docket Nos. 91 and 97.)

---

[2]Rule 56(d) provides that, "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:  (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations to take discovery; or (3) issue any other appropriate order."  Fed. R. Civ. P. 56(d).

[3]mSF stated, in its Reply Brief in Support of the Rule 56(d) Motion, that Defendants produced 30,000 pages of documents on February 6, 2012 and 71,000 pages of documents on March 5, 2012.  (Reply Br. in Support of Rule 56(d) Mot. at 2.)

mSF contends that it was unable to take necessary depositions in connection with the documents produced by Defendants on February 6 and March 5, 2012, because the time period for discovery had already expired in this case. However, mSF never sought leave to conduct depositions or other follow-up discovery after receiving the documents that Defendants produced on February 6 and March 5, 2012.[4] mSF could have made such a request pursuant to Rule 56(d) at any time after receiving Defendants' documents, and before we issued our January 17, 2013 Memorandum and Order, but chose not to do so.

mSF also argues that it was disadvantaged because it was required to file its Sur-Reply Brief in Response to Defendants Motion for Summary Judgment on March 8, 2012, only three days after receiving Defendants' March 5, 2012 document production. However, the Scheduling Order in this case did not set a deadline for mSF to file a Sur-Reply Brief in opposition to the

---

[4]mSF states in its Reply in Support of its Motion for Reconsideration that it made requests to re-open discovery in its Response Brief to the Motion for Summary Judgment (Docket No. 72), its Reply in support of its Rule 56(d) Motion (Docket No. 82), and its Alternative Proposed Order in connection with its January 23, 2012 Motion for Sanctions (Docket No. 67). (mSF Reply Br. at 2.) mSF made no such request in Docket Nos. 72 and 82. It did seek the reopening of discovery to take the depositions of unidentified witnesses as alternative relief in connection with its January 23, 2012 Motion for Sanctions, filed prior to Defendants' production of documents in February and March 2012. (See Docket No. 67). However, mSF did not reiterate this request in its Reply Brief or Supplemental Reply filed in support of its Motion for Sanctions (Docket Nos. 76, 86, 93 and 94), in connection with its Rule 56(d) Motion (Docket No. 68, 82, and 98), or in any of the documents it filed with respect to the Motion for Summary Judgment (Docket Nos. 69-72, 83-84, 89). Indeed, at no other time did mSF request that we reopen discovery and permit it to take any additional depositions. Moreover, the request for additional discovery that mSF made in connection with its January 23, 2012 Motion for Sanctions did not even attempt to satisfy Rule 56(d)'s requirements for obtaining additional discovery in response to a motion for summary judgment. See McCluskey v. Vincent, No. 11-2736, 2012 WL 5974215, at *4 (3d Cir. Nov. 30, 2012) ("Rule 56(d) requires 'that a party seeking further discovery in response to a summary judgment motion submit an affidavit specifying, for example, what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained." (quoting Dowling v. City of Phila., 855 F.2d 136, 139-40 (3d Cir. 1988)). Consequently, mSF simply never made a proper request for additional discovery pursuant to Rule 56(d).

Motion for Summary Judgment. (See Docket Nos. 43 and 57.) Indeed, mSF was required to file a Motion for Leave to File its Sur-Reply Brief and it has made no effort to explain why it did not wait to file its Sur-Reply until after it had thoroughly reviewed the documents produced by Defendants on February 6 and March 5, 2012, or request the opportunity to file an additional response to the Motion for Summary Judgment once it had reviewed those documents. Given mSF's failure to bring its need for additional discovery after receiving Defendants' February and March 2012 document productions to our attention in a timely manner, we cannot now credit its argument that our entry of judgment in Defendants' favor as to Count III is manifestly unjust because it needed additional discovery. Under these circumstances, we conclude that mSF has not established that our Order granting the Motion for Summary Judgment as to Count III in favor of Defendants resulted in a manifest injustice. The Motion for Reconsideration is, therefore, denied as to this ground for relief.

       B.       The Need to Correct a Clear Error of Law

mSF also argues that we should reconsider that part of our Order granting the Motion for Summary Judgment as to Count III of the Complaint because our determination that the evidence of record was insufficient to establish that Defendants provided mSF's Confidential Information to KPMG, Oracle or IBM Global Services was based on a clear error of law. (See 1/17/13 Mem. at 48.) mSF argues that there is evidence in the record that AHS disclosed the following features to IBM Global Services on August 24-25 and September 15, 2010: "one-call (real-time) scheduling for AHS contractors; the contractor dashboard concept for AHS contractors; field authorization using photos and real-time video (including SKYPE), and a contractor web portal for open dispatches and managing service orders." (mSF Br. at 9.) mSF maintains that it proposed, presented and developed products containing these same features, and, argues that the

evidence thus establishes that its "information **was disclosed** to IBM Global Services and was used by Defendants for their own benefit in 2010." (Id. (footnote omitted).) mSF maintains that we erred as a matter of law by taking from the jury the determination of whether the information disclosed to IBM Global Services is Confidential Information as that term is defined in the NDA.

The NDA defines Confidential Information as:

> any and all information concerning the business of a Party and such Party's customers, including without limitation, any and all current and future technical, operational or financial information, marketing or business plans, unpublished financial information or business results, forecasts, customer names, customer addresses, and related customer data, partners' names and information, vendor names and information, employee names and information, contracts, practices, services and support, procedures, trade secrets, and other business information including, but not limited to, technical data, know-how, software, reports, methods, strategies, plans, documents, drawings, designs, tools, models, inventions, patent disclosures, and Requests for Proposals that may be disclosed between the parties whether in written, oral, electronic, website-based, or other form.

(NDA ¶ 1.) To the extent that mSF is arguing that we erred by determining the meaning of the term "Confidential Information" as that term defined in the NDA, its argument fails because, under both Pennsylvania and Illinois law,[5] "[t]he meaning of an unambiguous written instrument presents a question of law for resolution by the court." Great American Ins. Co. v. Norwin School Dist., 544 F.3d 229, 243 (3d Cir. 2008) (quoting Murphy v. Duquesne Univ., 777 A.2d 418, 430 (Pa. 2001)); Gassner v. Raynor Mfg. Co. 948 N.E.2d 315, 326 (Ill. App. Ct. 2011) ("If the language of an agreement is facially unambiguous, then it is interpreted as a matter of law . . . ."). "'A contract contains an ambiguity if it is reasonably susceptible of different constructions

---

[5]Although Paragraph 8(e) of the NDA states that the NDA is to be construed according to the laws of the State of Illinois, it is also possible that Pennsylvania law is applicable. Nevertheless, because the laws of Pennsylvania and Illinois are identical in connection with this issue, we need not engage in a conflicts of laws analysis to determine which state's law applies. See Pacific Emp'rs Ins. Co. v. Global Reinsurance Corp. 693 F.3d 417, 432 (3d Cir. 2012) (quotation omitted).

and capable of being understood in more than one sense.'" <u>Great American Ins. Co.</u>, 544 F.3d at 243 (quoting <u>Murphy</u>, 777 A.2d at 430); <u>see also</u> <u>Kaplan v. Shire Bros., Inc.</u>, 266 F.3d 598, 605 (7th Cir. 2001) (stating that, under Illinois law, "contract language will only be found ambiguous when it is reasonably susceptible to different constructions" (citations omitted)). In this case, the NDA specifically and unambiguously defines Confidential Information (NDA ¶ 1). Consequently, whether material falls within that definition is a question of law for the court, not an issue for the jury.[6]

To the extent that mSF argues that we should have allowed it to present whatever evidence it has to the jury, so that the jury could determine if any of that evidence proved that Defendants violated the NDA, this argument fails as well. There is simply no evidence in the record, including the evidence referred to by mSF on page 9 of its Brief, that AHS or SVM provided any material specified in the definition of Confidential Information to IBM Global Services, KPMG, or Oracle. In the absence of any such evidence, mSF has failed to satisfy its burden of establishing the existence of a genuine dispute regarding whether SVM breached the NDA. We therefore conclude that we did not err as a matter of law in granting the Motion for Summary Judgment as to Count III of the Complaint. The Motion for Reconsideration is denied as to this ground for relief.

---

[6]In its Reply in Support of its Motion for Reconsideration, mSF argues, for the first time, that Paragraph 8(b) of the NDA is ambiguous. Paragraph 8(b) states that "Subject to the obligations of this Agreement, no Party will be precluded from independently developing technology or pursuing business opportunities similar to those covered by this Agreement." (NDA ¶ 8(b).) While mSF contends that this paragraph is ambiguous, it has not articulated a comprehensible alternative construction for this paragraph. mSF has, accordingly, failed to establish that Paragraph 8(b) of the NDA is reasonably susceptible of different constructions. See <u>Great American Ins. Co.</u>, 544 F.3d at 243 (quoting <u>Murphy</u>, 777 A.2d at 430); <u>Kaplan</u>, 266 F.3d at 605. The Motion for Reconsideration is, therefore, denied as to mSF's argument that we erred as a matter of law by granting the Motion for Summary Judgment as to Count III of the Complaint because Paragraph 8(b) of the NDA is ambiguous.

C.      <u>Newly Discovered Evidence</u>

mSF further argues that we should reconsider that part of our Order granting the Motion for Summary Judgment as to Count III of the Complaint because it has received new evidence that supports its claim that AHS breached the NDA.  This evidence consists of an email sent by AHS to its contractors announcing the development of "a partner portal that contains a contractor dashboard for AHS contractors and a web portal for open dispatches and managing service orders," as well as two documents that appear to be PowerPoint presentations.  (mSF Br. at 11, Exs. 3-5.)  Specifically, Exhibit 3 is an email sent by AHS to contractors on August 10, 2012; Exhibit 4 appears to be a PowerPoint entitled "Partner Portal Management" dated February 22, 2012; and Exhibit 5 appears to be a PowerPoint entitled "Dispatch Status Update" which is dated March 12, 2012.  mSF does not state, in its Brief, precisely when and from where it obtained these documents.

> "'[N]ew evidence,' for reconsideration purposes, does not refer to evidence that a party . . . submits to the court after an adverse ruling. Rather, new evidence in this context means evidence that a party could not earlier submit to the court because that evidence was not previously available."  [<u>Howard Hess</u>, 602 F.3d] at 252. Evidence that is not newly discovered, as so defined, cannot provide the basis for a successful motion for reconsideration.  <u>Harsco Corp. v. Zlotnicki</u>, 779 F.2d 906, 909 (3d Cir. 1985).

<u>Blystone</u>, 664 F.3d at 415-16 (second alteration in original).  All three of these documents existed months prior to our January 17, 2013 Memorandum and Order.  Moreover, mSF has made no attempt to establish that these documents were unavailable to it prior to January 17, 2013.  Accordingly, we conclude that mSF has not established that these documents constitute new evidence requiring reconsideration of our January 17, 2013 Order.  The Motion for Reconsideration is, therefore, denied as to this ground for relief.

## III.    CONCLUSION

For the reasons stated above, mSF's Motion for Reconsideration is denied.    An appropriate order follows.

BY THE COURT:

**/s/** John R. Padova

_____

John R. Padova, J.