IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MYSERVICE FORCE, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| AMERICAN HOME SHIELD | : | NO. 10-6793 |

## MEMORANDUM

**Padova, J.**                                                                June 17, 2014

This is a breach of contract action arising from Defendant American Home Shield's ("AHS") alleged breach of its duty of good faith and fair dealing in connection with its performance of one of its duties under a Memorandum of Agreement entered into by the parties on January 27, 2010 (the "MOA"). Before the Court is AHS's Motion for Summary Judgment. For the reasons that follow, the Motion is granted in part and denied in part.

## I.   BACKGROUND

### A.   Procedural Background

Plaintiff mServiceForce, Inc. ("mSF") filed this action on November 19, 2010. The Complaint asserted four causes of action against AHS and Service Master Consumer Services Limited Partnership ("SVM"): a claim for breach of contract against AHS (Count I); a claim for unjust enrichment and promissory estoppel against AHS (Count II); a claim for breach of contract against SVM (Count III); and a claim for tortious interference with contract against SVM (Count IV). Defendants moved for summary judgment as to all four claims and we granted that motion in part and denied it in part on January 17, 2013. See myServiceForce, Inc. v. American Home Shield, Civ. A. No. 10–6793, 2013 WL 180287 (E.D. Pa. Jan. 17, 2013). We denied the Motion for Summary Judgment mSF's claim, in Count I of the Complaint, that AHS breached its duty of good faith and fair dealing with respect to its obligations under the MOA to

impose status reporting requirements on its contractors. Id. at *27. We granted the Motion for Summary Judgment as to mSF's remaining claims for breach of contract asserted in Count I of the Complaint. Id. We also granted the Motion for Summary Judgment as to Counts II-IV of the Complaint and dismissed SVM as a Defendant in this action. Id. at *27-28.

After we resolved the Motion for Summary Judgment, we issued a new Scheduling Order, giving mSF the opportunity to produce revised expert reports with respect to the sole claim remaining in the case no later than February 20, 2013. (See 2/6/13 Order ¶ 2.) We also listed this case for trial on April 22, 2013. (Id. ¶ 10.) AHS subsequently filed a Motion to Strike Plaintiff's Experts, seeking to preclude the introduction of mSF's experts' reports and opinions at trial, and a Motion for Leave to File Motion for Summary Judgment, seeking to file a motion for summary judgment at to mSF's remaining claim, on the ground that mSF could not establish that it had been injured by AHS's alleged breach of its duty of good faith and fair dealing.

AHS's Motion to Strike Plaintiff's Experts asked that we strike the opinion of Thomas Tinsley that the only way that AHS could comply with its obligations under the status reporting requirements provision of the MOA was to require its contractors to purchase mSF's products. AHS also asked us to strike the expert report Tinsley authored with Marc Reid and Reid's opinions, as well as the reports and opinions of David Chandler Thomas and Bruce Luehrs, because those experts' opinions and reports were based on Tinsley's opinion. We granted the Motion to Strike on April 25, 2013. See myServiceForce, Inc. v. American Home Shield, Civ. A. No. 10-6793, 2013 WL 1773799 (E.D. Pa. Apr. 25, 2013). We also granted AHS leave to file a second Motion for Summary Judgment. See id. at *16-17.

mSF responded to AHS's second Motion for Summary Judgment by filing new expert reports prepared by David Chandler Thomas and Bruce Luehrs dated May 16, 2013. AHS filed a

Motion to Strike those expert reports on the ground that they were filed after the February 20, 2013 deadline for Plaintiff to provide amended expert reports. We denied that Motion to Strike, but granted AHS leave to depose Mr. Thomas and Mr. Luehrs and to submit its own expert reports responsive their opinions. (8/15/13 Order ¶¶ 4-5.) We also dismissed AHS's second Motion for Summary Judgment as moot and granted AHS leave to file a new Motion for Summary Judgment. (Id. ¶ 6.) AHS filed the instant Motion for Summary Judgment on December 20, 2013. That same day, AHS also filed a Motion to Strike Plaintiff's Experts, seeking to strike the new opinions and reports of Mr. Thomas and Mr. Luehrs on the grounds that they were unreliable and did not fit the remaining claim in this case. We granted AHS's Motion to Strike Plaintiff's Experts on May 2, 2014. See myServiceForce, Inc. v. American Home Shield, Civ. A. No. 10-6793, 2014 WL 1757161 (E.D. Pa. May 2, 2014).

B. Factual Background[1]

AHS, a subsidiary of SVM, sells home warranties that cover major systems and appliances in the home. (Quandt Dep. at 36-37.[2]) It engages three classes of contractors to perform the work under the warranties: (1) Preferred Contractors, who have operations agreements with AHS, pursuant to which AHS promises them a certain number of service calls per year; (2) Network Contractors, who have contracts with AHS but do not receive call commitments from AHS; and (3) direct dispatch contractors, who do not have formal service agreements with AHS. (Wanninger Dep. at 25-28.) In December 2006, John Lenihan, Project

---

[1] We discuss only the facts relevant to the instant Motion. A more detailed recitation of the parties' relationships and the facts underlying their dispute may be found in our January 17, 2013 Memorandum. See myServiceForce, 2013 WL 180287, at *1-10.

[2] The Depositions, Declarations, and Exhibits referred to in this portion of our Memorandum were made part of the record in connection with the first Motion for Summary Judgment.

3

Manager of SVM, contacted mSF regarding software that could be used by AHS's contractors that would be based on mSF's existing work order management and field service technician productivity products. (Joint Services and Pilot 1 Agreement (the "Pilot 1 Agreement") at 1; Marzola Decl. ¶¶ 2, 5, 7.) The parties entered into several contracts in connection with mSF's development of products for use by AHS's contractors: the January 18, 2007 Mutual Non-Disclosure Agreement, the September 17, 2007 Pilot 1 Agreement, the December 12, 2008 Joint Services Agreement, and the January 27, 2010 MOA. SVM paid mSF a portion of its initial costs to develop those products pursuant to the Pilot 1 Agreement, but the parties anticipated that mSF would be primarily compensated for its efforts through revenues from the sale of its products to AHS's contractors. (Pilot 1 Agreement ¶¶ 2.1.1, 2.1.2; Pilot 1 Agreement Ex. A at A-1-A-2.)

      1.    The MOA

By the time the parties entered into the MOA, mSF had developed a service work order ("SWO") automation and status reporting product called myServiceACE ("ACE"), which would enable AHS's contractors to report the statuses of their SWOs, such as the dates and times of customer appointments and the date and time a SWO had been completed, to AHS automatically and in real time. Pursuant to the MOA, mSF was to provide SWO automation and status reporting software, sales and marketing support, and enhancements for ACE, including credit card processing, automatic invoicing, low cost status reporting, field authorization and a bulk order management system. (MOA at 1-2.) The MOA was effective for a two-year term. (Id. at 1.) The MOA required AHS to: (1) pay $250,000 to mSF "in full and final satisfaction of all obligations of AHS under the 2009 Plan;" (2) require its Preferred and Network contractors to "report Appointment Set within 24 hours and SWO Completion within 5 business days;" (3)

continue to employ a full time contractor support person; (4) support mSF's marketing of its products to AHS's contractor network; (5) work with mSF to develop and test a Field Authorization process in the first quarter of 2010; (6) allow mSF to give presentations at regional AHS contractor events during the spring of 2010; and (7) provide IT support. (Id. at 2.)

Beginning on April 7, 2010, mSF gave presentations about its products and services to AHS's contractors at 14 regional events. (Marzola Decl. ¶ 20.) Both contractor attendance at the events and the number of contractors purchasing mSF's products were lower than mSF's employees expected. (Id. ¶ 22.) In response to the lower than expected sales of mSF's products, on April 27, 2010, three months after mSF and AHS entered into the MOA, AHS asked mSF to prepare a proposal for making contractor enrollment in mSF's products mandatory, with AHS sharing the costs for certain classes of contractor. (mSF Ex. 102.) AHS ultimately decided not to enter into the proposed agreement to make its contractors' use of mSF's products mandatory because mSF's proposal was too costly. (mSF Ex. 103.) mSF subsequently filed this lawsuit.

2.  mSF's claim for breach of the duty of good faith and fair dealing

Count I of the Complaint included a claim that AHS breached its obligations under the MOA, including its obligation to require its Preferred and Network contractors to "report Appointment Set within 24 hours and SWO Completion within 5 business days" (the "status reporting requirements provision"). (MOA at 2.) In its first Motion for Summary Judgment, AHS argued that it had complied with the status reporting requirements provision of the MOA by including requirements for status reporting in its agreements with its Preferred and Network contractors. In 2010, AHS's operations agreements with its Preferred Contractors required that: "[s]cheduled appointments . . . be communicated to AHS immediately" and the "completion date . . . be provided to AHS within 24 hours of finishing the service call." (Wanninger Dep. at 81-

83, 87-88.) AHS's 2010 service agreements with its Network Contractors similarly stated: "'[f]or each Dispatch, Servicer shall (i) use every reasonable effort to **immediately** communicate to AHS the scheduled appointment date and time; [and] (ii) provide to AHS the completion date for each dispatch within **24** hours of finishing the service call.'" (mSF Ex. 40 (quoting 2010 AHS Service Agreement, Part 8).) In its response to that Motion, mSF contended that AHS breached its duty of good faith and fair dealing in its performance of the status reporting requirements provision of the MOA by failing to enforce the status reporting requirements it imposed on its contractors.

We determined that there was evidence in the summary judgment record that could support a jury's finding that AHS breached its contractual duty of good faith and fair dealing in connection with the performance of its obligations pursuant to the status reporting requirements provision of the MOA. (See mSF Exs. 39-40; mSF Ex. 63 at AHS 7315-6; Orcutt Dep. at 60-61.) We concluded, based on this evidence, that there was a genuine issue of material fact as to mSF's claim that AHS breached its contractual duty of good faith and fair dealing in connection with its performance of its obligations pursuant to the status reporting requirements provision of the MOA by failing to enforce those requirements and, as noted above, we therefore denied the first Motion for Summary Judgment insofar as it pertained to that claim. Id. AHS has now moved for summary judgment as to this sole remaining claim on the ground that mSF has failed to satisfy its burden of proving that it has been damaged as a result of AHS's alleged breach of the duty of good faith and fair dealing.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law . . . ." Id.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has] cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1).

Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In evaluating the evidence, we take the facts "in the light most favorable" to the nonmoving party and "draw all reasonable inferences" in its favor. Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). Nonetheless, "[s]peculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 408 (E.D. Pa. 2000) (citation omitted), aff'd 29 F. App'x 100 (3d Cir. 2002). Indeed, evidence introduced to defeat or support a motion for summary

judgment must be capable of being admissible at trial. Callahan v. AEV, Inc., 182 F.3d 237, 252 n.11 (3d Cir. 1999) (citing Petruzzi's IGA Supermarkets, Inc. v. Darling−Delaware Co., 998 F.2d 1224, 1234 n.9 (3d Cir. 1993)).

## III. DISCUSSION

AHS argues that it is entitled to summary judgment as to mSF's claim for breach of the duty of good faith and fair dealing because there is no evidence in the record of this action that supports mSF's assertion that it was damaged by AHS's alleged breach. Since a claim for a breach of the duty of good faith and fair dealing is a contract claim,[3] mSF has to establish the following in order to succeed on its claim: "(1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship, 79 F.3d 496, 514 (6th Cir. 1996). See also Sewer Auth. of City of Scranton v. Pa. Infrastructure Inv. Auth., 81 A.3d 1031, 1041-42 (Pa. Commw. Ct. 2013) ("The elements of a breach of contract are (1) the existence of a contract, (2) a breach of the duty imposed by the contract and (3) damages resulting from the breach." (quoting Orbisonia-Rockhill Joint Mun. Auth. v. Cromwell Twp., 978 A.2d 425, 428 (Pa. Cmmw. Ct. 2009))).[4]

---

[3]Under both Pennsylvania and Tennessee law, a claim for breach of the duty of good faith and fair dealing is a breach of contract action. See McAllister v. Royal Caribbean Cruises, Ltd., Civ. A. No. 02-2393, 2003 WL 23192102, at *4 (E.D. Pa. Sept. 30, 2003) (citing Fraser v. Nationwide Mut. Ins. Co., 135 F. Supp. 2d 623, 643 (E.D. Pa. 2001); Blue Mountain Mushroom Co. v. Monterey Mushroom, Inc., 246 F. Supp. 2d 394, 400 (E.D. Pa. 2002)); see also Fountain Leasing, LLC v. Kloeber, Civ. A. No. 12-317, 2013 WL 4591622, at *4 (E.D. Tenn. Aug. 28, 2013) (stating that, under Tennessee law, a claim for breach of the implied covenant of good faith and fair dealing "serves as part of a breach of contract action rather than serving as a cause of action in and of itself." (citing Lyons v. Farmers Ins. Exch., 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000)).

[4]We have diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332, as mSF is a citizen of Pennsylvania and the Defendant is a citizen of Tennessee and the amount in controversy exceeds $75,000. "As a federal court sitting in diversity, we apply the choice-of-law rules of the forum state, which is Pennsylvania in this case." Pacific Emp'rs Ins. Co. v. Global

Moreover, in order to recover on its claim for breach of the duty of good faith and fair dealing, mSF must prove damages resulting from the alleged breach with reasonable certainty. See ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 669 (3d Cir. 1998) (stating that the general rule in Pennsylvania is that the injured party must prove damages from breach of contract with reasonable certainty (citations omitted)); Holder v. S&S Family Entertainment, LLC, Civ. A. No. M2013-497-COA-R3-CV, 2014 WL 1118079, at *12 (Tenn. Ct. App. Mar. 19, 2014) ("Damages for breach of contract . . . are permissible even when the plaintiff is unable to prove the exact amount of those damages.  All that an award for damages requires is proof of damages within a reasonable degree of certainty." (quotation and citations omitted)).

There are three "theories of damages to remedy a breach of contract:  'expectation' damages, 'reliance' damages, and 'restitution' damages." ATACS, 155 F.3d at 669 (citing Trosky v. Civil Serv. Comm'n, 652 A.2d 813, 817 (Pa. 1995); Restatement (Second) of Contracts § 344 (1981)); see also Trosky, 652 A.2d at 817 (noting that remedies for breach of contract "are designed to protect either a party's expectation interest 'by attempting to put him in as good a position as he would have been had the contract been performed' . . . ; his reliance

---

Reinsurance Corp., 693 F.3d 417, 432 (3d Cir. 2012) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 170–71 (3d Cir. 2011)). "'Pennsylvania applies the . . . flexible, interests/contacts methodology to contract choice-of-law questions.'" Id. (alteration in original) (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226–27 (3d Cir. 2007)).
   The MOA does not contain a choice of law provision. Consequently, the first step in our choice of law analysis is to "identify the jurisdictions whose laws might apply," in this case, Pennsylvania and Tennessee. Id. (citing Hammersmith, 480 F.3d at 230.)  We then "determine the substance of these states' laws, and look for actual, relevant differences between them." Id. (citing Hammersmith, 480 F.3d at 230.)   "'If [the] two jurisdictions' laws are the same, then there is no *conflict* at all, and a choice of law analysis is unnecessary.'" Id. (alteration in original) (quoting Hammersmith, 480 F.3d at 230).  There is no difference between the law of Pennsylvania and the law of Tennessee with regard to the contractual duty of good faith and fair dealing and the elements of a claim for breach of contract, so we need not engage in a choice of law analysis.

interest 'by attempting to put him back in the position in which he would have been had the contract not been made'; or his restitution interest '[by requiring] the other party to disgorge the benefit he has received by returning it to the party who conferred it'" (quoting Restatement (Second) of Contracts, § 344, Comment a)); Eastern Sky Prods., Inc. v. Ram Graphics, Inc., Civ. A. No. 01-A-01-9305-CH00215, 1994 WL 642760, at *3-4 (Tenn. Ct. App. Nov. 16, 1994) (citations omitted).  mSF does not argue that it is entitled to restitution damages in this case, so we need only examine whether there is sufficient evidence in the record to create genuine issues of material fact regarding its entitlement to expectation and reliance damages.

    A.    Expectation Damages

Expectation damages are "designed to place the aggrieved in as good a position as would have occurred had the contract been performed." ATACS, 155 F.3d at 669 (citing Trosky, 652 A.2d at 817; Restatement (Second) of Contracts §§ 344(a), 347); see also Riad v. Erie Ins. Exch., Civ. A. No. E2013-288-COA-R3-CV, 2013 WL 5874733, at *16  (Tenn. Ct. App. Oct. 31, 2013) (stating that  "'[t]he purpose of assessing damages in a breach of contract suit is to place the plaintiff, as nearly as possible, in the same position he would have had if the contract had been performed.'" (quoting Wilhite v. Brownsville Concrete Co., 798 S.W.2d 772, 775 (Tenn. Ct. App. 1990))).  "The most common method for awarding expectation damages is to award the injured party the profits it would have made had the contract been completed." Eastern Sky Prods., 1994 WL 642760, at *3 (citing Inland Equip. Co. v. Tennessee Foundry & Mach. Co., 241 S.W.2d 564, 567 (Tenn. 1951); Morristown Lincoln-Mercury, Inc. v. Roy N. Lotspeich Publishing Co., 298 S.W.2d 788, 793 (Tenn. Ct. App. 1956)). See also ATACS, 155 F.3d at 669 (stating that expectation damages are "measured by 'the losses caused and gains prevented by defendant's breach, to the extent that [they] are in excess of any savings made possible by

nonperformance.'" (quoting American Air Filter Co. v. McNichol, 527 F.2d 1297, 1299 (3d Cir. 1975))).

mSF relies on the expert reports prepared by David Chandler Thomas and Bruce Luehrs to establish that it suffered expectation damages. (See Pl.'s Mem. in Opp'n to Def.'s Third Mot. for Summ. J. ("Pl.'s Mem.") at 18-30; Pl.'s Sur-Reply in Opp'n to Def.'s Third Mot. for Summ. J. ("Pl.'s Sur-Reply") at 2-3, 6-8.) Specifically, mSF relies on Mr. Thomas's opinions as to the revenues and profits that mSF lost as a result of AHS's alleged breach of its duty of good faith and fair dealing (Pl.'s Mem. at 19-21); and Mr. Luehrs's opinion of the value that mSF would have had at the end of the two-year term of the MOA if AHS had not breached its duty of good faith and fair dealing (id. at 24-26). These opinions constitute mSF's sole support for its claim for expectation damages.

AHS argues that it is entitled to summary judgment because mSF cannot rely on Mr. Thomas's and Mr. Luehrs's opinions and reports to establish that it suffered expectation damages. On May 2, 2014, we struck Mr. Thomas's and Mr. Luehrs's opinions and expert reports from the record of this action. See myServiceForce, 2014 WL 1757161, at *13. We determined that Mr. Thomas's calculation of mSF's lost revenue and profits depended upon a misunderstanding of AHS's duty of good faith and fair dealing with respect to the MOA and further concluded, accordingly, that his opinion as to mSF's lost revenue and profits does not fit the facts of this case and is unreliable. Id. at *12. We further determined that, because Mr. Luehrs's valuation of mSF was based on Mr. Thomas's calculation of the revenue that mSF would have generated if AHS had not breached its duty of good faith and fair dealing pursuant to the MOA, Mr. Luehrs's opinion of mSF's value also does not fit the facts of this case and is unreliable. Id. at *12-13.

11

As the plaintiff in this action, mSF has the burden of proof to establish the elements of its claim for breach of the duty of good faith and fair dealing, including the existence of damages caused by the breach. See Household Fin. Ctr., Inc. v. Kirby, Civ. A. No. M2011-01039-COA-R3-CV, 2012 WL 397453, at *3 (Tenn. Ct. App. Feb. 7, 2012) (quoting ARC LifeMed, Inc. v. AMC-Tenn., Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)); see also Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 102 (3d Cir. 2001) (citation omitted). mSF has pointed to no evidence that remains in the record of this case in support of its claim that it suffered expectation damages in connection with AHS's alleged breach of its duty of good faith and fair dealing with respect to the MOA. We conclude, therefore, that AHS is entitled to summary judgment as to mSF's claim for expectation damages arising from AHS's alleged breach of its duty of good faith and fair dealing in connection with the MOA. See Celotex, 477 U.S. at 322 (stating that "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

B.  Reliance Damages

Although expectation damages are the usual and preferred remedy for breach of contract, an injured party may alternatively seek reliance . . . damages." Darius Int'l, Inc. v. Young, Civ. A. No. 05-6184, 2008 WL 1820945, at *51 (E.D. Pa. Apr. 23, 2008). A party typically seeks reliance damages when "recovery based on traditional notions of expectation damages is clouded because of the uncertainty in measuring the loss in value to the aggrieved contracting party." ATACS, 155 F.3d at 669 (citation omitted); see also Eastern Sky Prods.,1994 WL 642760, at *4 ("Anticipated profits cannot always be proved with the required degree of certainty. When this circumstance occurs, courts permit injured parties to recover damages based on their 'reliance

12

interests.'"). "Reliance damages seek to put the injured party in the position that it would have had if the contract had never been made. Such damages are usually measured by the expenditures made in performance of the contract." Darius Int'l, 2008 WL 1820945, at *51; see also Eastern Sky Prods., 1994 WL 642760, at *4 (stating that reliance damages "include the expenses the injured party incurred in preparation and part performance of the contract" (citations omitted)).

     mSF argues that it is entitled to recover as reliance damages the expenditures that it made on product development and marketing in reliance on AHS's performance of its duty of good faith and fair dealing in connection with the MOA. In support of this argument, mSF has submitted the Supplemental Declaration of Gary A Rawding, Chief Executive Officer of mSF. (Pl.'s Ex. H.) Rawding states, in his Supplemental Declaration, that "mSF spent $615,560 in anticipation of AHS's performance of its obligation to require Preferred and Network contractors to report Appointment Set within 24 hours and SWO Completion within 5 business days." (Id. ¶ 2.) mSF has also submitted a spreadsheet summarizing the expenses it incurred in connection with its work for AHS. (Pl.'s Ex. I.) According to the spreadsheet, mSF spent $555,560 on the development of products in connection with the MOA and another $60,000 marketing its products to AHS's contracts through AHS's contractor roadshows. (Id.)

     AHS argues that mSF's product development costs are not recoverable by mSF as reliance damages because mSF cannot establish that it incurred those costs solely in connection with AHS's obligation to impose status reporting requirements on its contractors. AHS maintains that mSF actually incurred those expenditures in connection with other provisions of the MOA regarding product development and attendance at AHS's regional roadshows. AHS also argues that mSF cannot recover its product development costs as reliance damages because

the MOA does not specifically provide that mSF can recover product development costs.

mSF maintains that it is entitled to reliance damages based on its expenditures for product development and marketing despite the MOA's lack of any specific provision for such recovery because it entered into the MOA based upon AHS's agreement to the status reporting requirements provision of the MOA. mSF maintains that both it and AHS understood that, if AHS satisfied its obligation under the MOA to require its contractors to comply with their status reporting requirements, many of those contractors would purchase products from mSF. mSF further asserts that it spent money on product development and marketing in anticipation of AHS's good faith performance of its obligations under the status reporting provision of the MOA. mSF is entitled, under both Pennsylvania and Tennessee law, to seek as damages for AHS's alleged breach of its duty of good faith and fair dealing, the expenditures it made in reliance on AHS's performance of its duty of good faith and fair dealing pursuant to its obligation under the status reporting requirements provision of the MOA. See Darius Intern., 2008 WL 1820945, at *51; Eastern Sky Prods., 1994 WL 642760, at *4. mSF has cited to evidence in the record of this action to support its claim that it expended $615,560 for product development and marketing in reliance on AHS's performance of its duty of good faith and fair dealing. (See Pl.'s Exs. H, I.) We must consider that evidence "and draw all reasonable inferences in the light most favorable" to mSF. See Lamont, 637 F.3d at 179 n.1 (citation omitted). We conclude, accordingly, that mSF has pointed to sufficient evidence in the record to establish the existence of a genuine issue of material fact regarding whether it incurred reliance damages in connection with AHS's alleged breach of its duty of good faith and fair dealing in connection with the status reporting requirements provision of the MOA. AHS's Motion for

Summary Judgment is, therefore, denied as to mSF's claim for reliance damages arising from AHS's alleged breach of its duty of good faith and fair dealing in connection with the MOA.

## IV. CONCLUSION

For the foregoing reasons, AHS's Motion for Summary Judgment is granted as to mSF's claim for expectation damages arising from AHS's alleged breach of its duty of good faith and fair dealing in connection with the status reporting requirements provision of the MOA. AHS's Motion for Summary Judgment is denied as to mSF's claim for reliance damages arising from AHS's alleged breach of its duty of good faith and fair dealing in connection with the status reporting requirements provision of the MOA. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.